# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**MATTHEW HUSKEY**                                                           **PLAINTIFF**

**v.**                                                            **No. 1:17CV140-JMV**

**MARSHALL FISHER, ET AL.**                                        **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Matthew Huskey, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that defendants used excessive force against him and denied him adequate medical care. The defendants have moved for summary judgment, and the plaintiff has responded to the motion. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and the instant case will be dismissed.

### Factual Allegations

Mr. Huskey alleges that on September 8, 2016, the defendants used excessive force against him while he was in the clinic for a sick call. The court previously outlined the sequence of events in a Report and Recommendation:

> [Mr. Huskey] saw the nurse, and the Clinic Officer told him to stand against the wall. Lt. Griffin entered the clinic and asked the nurse for a bandage. He saw Mr. Huskey and told him to take his hands out of his pockets. Huskey first ignored Griffin, but eventually took his hands out of his pockets – and immediately put them out of sight behind his back. He then laughed at Griffin.

> Lt. Griffin yelled and cursed at him, drawing Lt. Scott into the clinic, as well. Scott told Huskey to get against the wall; Huskey complied, but Griffin grabbed him by the neck and pinned his face against the wall. Huskey turned and tried to break Griffin's hold, and the two officers took him to the ground and restrained him with flex cuffs. A doctor later told him that he had broken his arm when he hit the ground during the altercation. By this point, Captain Munford and defendant Clark arrived and shoved Huskey's face into the wall. Clark then asked if anyone had patted Huskey down, and, when no one answered, Clark yelled, "He's got a knife!" Defendant Munford then patted Huskey down, then yelled, "Oh, you mother—ker, you got a knife!" Munford then turned Huskey around and, with Clark, removed Huskey's shoes and pants. Defendants Munford, Griffin, Scott, Clark, and Herring then took turns slapping Huskey (who was still restrained) about the face and head. Munford said that he would teach Huskey's "white ass" about hitting one of his officers and having a knife.

Report and Recommendation [23] at pp. 2-3, adopted at [27].

Mr. Huskey also claims that after the incident in the clinic, Captain Mary Jones left him in flex cuffs for about an hour, and it took four or five hours for the doctor to arrive. [23] at 4. Dr. Santos then arrived, examined him, and told Jones that MDOC policy required that inmates visit the hospital after an altercation with staff. *Id*. Mr. Huskey testified that Captain Jones told Dr. Santos that she would not transport him to the hospital and that Dr. Santos could conduct the examination, stating, "If you don't see him, he won't be seen." *Id*. Dr. Santos finished examining Mr. Huskey and said he could return to his building. *Id*. Mr. Huskey seeks compensatory damages and injunctive relief. [1] at pp. 25-26.

In his complaint, Mr. Huskey has described his efforts to exhaust prison administrative remedies prior to filing his lawsuit. [1] at pp. 8-10. Mr. Huskey claims that on September 12, 2016, he filed three separate grievances – one relating to excessive use of force, one relating to the denial of medical care by Capt. Jones, and one relating to failure to get medical care by Officer Hope. *Id*. at p. 8. He alleged that each of the grievances was rejected by the Administrative Remedy Program. *Id*. He attached to his complaint the relevant grievances, each of which was rejected during initial screening. *Id*. at pp. 28–34. The defendants presented MDOC Administrative Remedy Program documents confirming Mr. Huskey's submissions and the subsequent rejections from the ARP. *See*,

ARP MSP-16-1859; ARP MSP-16-1860; ARP MSP-16-1861; Affidavit of R. Pennington regarding amendment/appeal of ARP MSP-16-1859; and Affidavit of R. Pennington regarding amendment/appeal of all three grievances.

**Failure to Exhaust Administrative Remedies**

The documents the parties have provided reveal that Mr. Huskey did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The

exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance

system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id*. The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16,

2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Howard, supra.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id.* Issuance of the Second Step Response is the only way to complete the grievance process. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

## Exhaustion in the Present Case

In this case, all of Mr. Huskey's grievances were rejected during the initial screening phase of the grievance process because "the requested relief [was] beyond the power of ARP to grant." Doc. 129-1 at 2, Doc. 129-2 at 2, Doc. 129-3 at 2. Rejection of a grievance at the screening phase terminates the grievance process without exhausting administrative remedies. *See Woodford, Seales, Goldmon, and Robinson, supra.* Once a grievance is rejected, that grievance cannot proceed to

exhaustion.  If the deficiencies are "technical" or "matters of form," then an inmate may submit a corrected grievance within 5 days – and the corrected grievance, if accepted, may proceed through the process to exhaustion.  Mr. Huskey did not submit a corrected grievance to cure the defects in his rejected ones; as such, he did not exhaust his administrative remedies as to any of his grievances.  The instant case must therefore be dismissed without prejudice for failure to exhaust administrative remedies.

As relief for each of his grievances, Mr. Huskey requested that the involved staff be "punished to the max."  The Legal Claims Adjudicator rejected the grievances because "the requested relief is beyond the power of ARP to grant."  Mr. Huskey argues in his response to the instant motion that the Legal Claims Adjudicator used improper criteria when conducting the initial screening of his grievances.  Huskey included a copy of the relevant portion of an older version of the MDOC Standard Operating Procedures (effective May 1, 2015), which lists the reasons a grievance may be rejected, and none of those reasons specified that "the requested relief is beyond the power of ARP to grant" was a ground for doing so.  However, the MDOC Handbook effective at the time (a newer version than the one he attached to his response) lists among the reasons for initial rejection of a grievance that "[t]he relief sought is beyond the power of MDOC to grant."  MDOC Handbook (Rev. June 2016) at 16 (located on the MDOC public website.  *See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf  (last visited April 3, 2019)).

Mr. Huskey requested as relief that MDOC punish its staff.  MDOC certainly has the power to punish its staff; however, the prison grievance system is not the forum in which to do so.  In addition, there is no allegation or evidence that the Legal Claims Adjudicator (who leads the Administrative Remedy Program) has the power to punish staff under any circumstances.  Thus, as indicated on the responses to Mr. Huskey's grievances, the Administrative Remedy Program simply did not have the

power to take the action he requested (maximum punishment of the staff). As such, the grievances were properly rejected at the screening phase, as the relief he requested was unavailable. Huskey did not file corrected grievances to cure that defect; instead, he attempted to appeal the denials. That is not the proper procedure to follow after receiving a denial. He could have filed a new grievance altogether – or he could have filed a corrected grievance to cure the defects in the original ones. He did neither. Hence, Matthew Huskey did not exhaust his administrative remedies before filing the instant suit.

## Conclusion

For the reasons set forth above, the motion [129] by the defendants for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.[1] A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 4th day of April, 2019.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE

---

[1] Defendant Dreka Scott was served with process in this case but did not file an answer. However, as the plaintiff did not exhaust his administrative remedies as to any of his claims, including those involving defendant Scott, she will be dismissed from this case, as well.