IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MATTHEW HUSKEY                                                                    PLAINTIFF

v.                                                                       No. 1:17CV140-JMV

MARSHALL FISHER, ET AL.                                                          DEFENDANTS

ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION [179] TO FIND
HIS MOTION TO ALTER OR AMEND JUDGMENT UNDER
FED. R. CIV. P. 59(e) TO BE TIMELY FILED

This matter comes before the court on remand from the Fifth Circuit Court of Appeals for a

factual inquiry into the timeliness of the plaintiff's Motion to Alter or Amend Judgment under Fed. R.

Civ. P. 59(e).   After discovery and briefing, the plaintiff has filed an unopposed motion [179] for this

court to find his motion [140] to alter or amend judgment to be timely filed.   The defendants have

responded [181] to the motion, and the matter is ripe for resolution.   For the reasons set forth below,

the instant motion [179] will be granted; the court finds the plaintiff's motion [140] to alter or amend

to be timely filed.

**Procedural Posture and Factual Background**

Following remand, the attorneys for the plaintiff and those for the defendants engaged in a

collaborative effort to explore the factual inquiries posed by this court and the Fifth Circuit.   That

effort established the facts set forth below.

At all times relevant herein, Matthew Huskey was incarcerated in the custody of MDOC and

housed at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi.   On

September 1, 2017, Matthew Huskey ("Plaintiff" or "Huskey") filed a complaint against Marshall

Fisher and others ("Defendants") requesting damages, injunctive relief, and declaratory relief under 42

U.S.C. § 1983.   Huskey argued that the defendants committed constitutional violations of due process

under the Fourth Amendment, excessive force under the Eighth Amendment, and privacy under the Fourth and Eighth Amendments, among others. The defendants filed a motion for summary judgment, arguing that Huskey's claims should be dismissed for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). This court granted summary judgment and entered judgment for the defendants on April 4, 2019.

Huskey filed a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), dated April 27, 2019, but not postmarked until May 3, 2019. The deadline for filing the Motion to Alter or Amend Judgment had expired the day before – May 2, 2019 (April 4, 2019 + 28 days). *See* Fed. R. Civ. P. 59(e). This court denied [148] the Motion to Alter or Amend judgment on July 15, 2019, without addressing whether it was timely. Huskey filed his Notice of Appeal with the Fifth Circuit on August 8, 2019, raising several arguments. Doc. 151; *Huskey v. Jones*, 860 F. App'x 322, 324-26 (5th Cir. 2021).

The Fifth Circuit remanded the case for factual findings to determine whether that Court has jurisdiction over Huskey's appeal based upon whether the Notice of Appeal was timely filed. *Bowles v. Russell*, 551 U.S. 205, 214 (2007) (timeliness of Notice of Appeal is a jurisdictional issue); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) (jurisdiction based upon timeliness of Notice of appeal cannot be waived or forfeited). Though neither party raised the issue, the Fifth Circuit must address the jurisdictional question before considering the merits. *Hamer, supra*.

A notice of appeal must be filed within 30 days of entry of the judgment from which the appeal is taken. Fed. R. App. P. (a)(1)(A). The Fifth Circuit noted that Huskey filed his notice of appeal on August 8, 2019 – more than 30 days after the entry of this court's April 4, 2019, judgment. Hence, absent an extension of the deadline, Huskey's appeal was untimely filed. However, a motion to alter or amend judgment under Fed. R. Civ. P. Rule 59(e), when timely filed (within 28 days of

judgment), extends the time for filing a notice of appeal until 30 days after disposition of the motion. Fed. R. App. P. 4(a)(4)(A)(iv); Fed. R. Civ. P. 59(e). This court's order denying Huskey's Rule 59(e) motion was entered July 15, 2019. Thus, if Huskey's Rule 59(e) motion was timely, his August 8, 2019, notice of appeal would also be timely, as it would have been filed within 30 days of entry of this court's order denying his Rule 59(e) motion.

The Fifth Circuit concluded that its appellate jurisdiction over Huskey's appeal rests on whether the "prison mailbox rule" applied to render the Rule 59(e) motion timely. *Huskey v. Jones*, 860 F. App'x 322, 324-26 (5th Cir. 2021). Under the prison mailbox rule, a prisoner files a timely Rule 59(e) motion by depositing it in the prison mail system "on or before the last day for filing." Fed. R. App. P. 4(c)(1); *see Uranga v. Davis*, 893 F.3d 282, 285 (5th Cir. 2018) (the Fifth Circuit has extended the prison mailbox rule to Rule 59(e) motions). Huskey offered an explanation regarding the timeliness of his Rule 59(e) motion in an included declaration.[1] *Huskey, supra*, at 326. The Fifth Circuit held that the record was nonetheless insufficient to make that determination – and remanded the case for this court to resolve factual questions regarding the timeliness of Huskey's Rule 59(e) motion and whether he satisfied the prison mailbox rule in filing it. Doc. 155 at 7.

### Factual Issues to Resolve on Remand

On remand, this court entered an order appointing counsel for Huskey and identified the issues the Fifth Circuit set forth regarding the timeliness inquiry. The issues are listed below – and a brief resolution of each issue follows in brackets:

(1) Whether the plaintiff attached his Motion to Alter or Amend Judgment to the Inmate Legal Assistance Program ("ILAP") request form.

---

[1] These facts and others are set forth in detail below.

[Huskey did not. Rather, as discussed below, he complied with the applicable prison policies governing the placement of legal mail in the prison mailing system]

(2) Whether the plaintiff properly presented his Motion to Alter or Amend to prison officials on other occasions before the 28-day deadline for filing the motion expired on May 2, 2019.

[Under applicable procedures at the time, by filing an ILAP Request Form , an inmate was required to first request – and be granted – an appointment with ILAP staff before presenting to prison officials the legal document to be filed. As explained below, Huskey timely complied with the prison policies, but the prison officials did not.]

(3) The specific actions the plaintiff undertook to comply with the 28-day filing deadline.

[These actions are presented in detail below.]

(4) The specific policies or instructions which are set forth in any applicable prison manual or handbook describing what actions an inmate must take to accomplish the timely filing of legal documents with a court.

[These policies and instructions are presented in detail below.]

(5) Whether the plaintiff substantially complied with the applicable prison manual or handbook procedures in presenting his Motion [140] to Alter or Amend Judgment for mailing.

[The plaintiff substantially complied with the applicable procedure.]

(6) If so, whether his substantial compliance satisfies the Prison Mailbox Rule.

[His substantial compliance satisfies the prison mailbox rule.]

Doc. 156 at 2-3.   The parties stipulated to the facts resolving these issues, as set forth below.

**Multiple Policies Regarding Sending Legal Mail Through ILAP**

After the parties conducted discovery, it became apparent that *multiple* sources exist for

Inmate Legal Assistance Program procedures for sending legal mail to the court:   (1) the MDOC

Inmate Handbook[2]; (2) various MDOC Standard Operating Procedures[3]   ("SOP"); (3) the Wilkinson

---

[2]  Doc. 179-4.

[3]  Docs. 179-3, 179-6.

- 4 -

County Correctional Facility ("WCCF") inmate handbook (entitled BIONIC)[4], (4) the procedure, as implemented, at WCCF[5], and (5) instructions on the ILAP Request Form, itself[6]. There is both a great deal of overlap among the procedures – and some differences. An example of overlap: the WCCF Procedure actually references the two Inmate Handbooks and the MDOC SOPs to describe "the actions inmates must take to accomplish the timely filing of legal documents." Doc. 181-4 at 2. The differences mostly involve the level of detail set forth in the procedures (with the local procedures having the most detail). In the interest of completeness, from each source, the court will set forth the procedures describing the actions an inmate must take to send legal mail to the court to meet a deadline.[7]

### MDOC Inmate Handbook ILAP Procedure

Each state and private institution will have an ILAP….

(Doc. 179-4 at 30, I(B).

The inmate must request a copy of the Legal Assistance Request Form from the tower officer in their housing unit.

(*Id*. at 30, II(A)).

The form must be filled out completely by the inmate, unless they cannot write. However, in all situations, the person requesting the assistance must sign the form.

---

[4] Doc. 179-5 (BIONIC is an acronym for "Believe It or Not I Care.") In the interest of clarity, the court will refer to this document as the "WCCF Inmate Handbook."

[5] Doc. 181-4 (affidavit of Emma Taplin, Compliance Coordinator at WCCF). The court will refer to this document as the "WCCF Procedure."

[6] Doc. 179-2 at 4.

[7] The procedures from the various sources are lengthy, and significant parts are not relevant to the instant case. For example, parts of the procedures involve obtaining legal assistance during ILAP's regularly scheduled visits to the inmate's unit. As this is not the procedure at issue in the present case, the court has not included it in the instant order. In the interest of brevity and clarity, the court includes only the relevant parts of the procedures.

Case managers will answer questions regarding accessing the program and will assist illiterate inmates in completing request forms.

(*Id.* at 30, II(B)).

Once the form is completed, it should be returned to the ILAP office according to the institutional/facility procedures.

(Doc. 179-4 at 30, II(C)).

Should Court … deadlines fall on a date prior to the inmate's scheduled service day, the inmate should complete an ILAP request form and submit it to the tower officer along with proof of the deadline. The officer will telephone ILAP so ILAP staff can provide services prior to the deadline date.

(Doc. 179-4 at 31, V(G)).

After the request has been reviewed, the ILAP staff will either schedule the inmate for assistance or will notify them that their request is being returned with an explanation of that return.

(*Id.* at 30, III(A)).

Mail from an inmate to any of the above listed persons [designated attorney, any state or federal court, or any public or MDOC official] will be considered confidential. ILAP staff will verify the authenticity of the correspondence. It will be placed in an envelope, sealed in the presence of the ILAP staff member, and it will not be opened or otherwise inspected.

(*Id.* at 30, IV(B)).

Indigent inmates who need to send legal mail will have to prove the mail is for pending litigation. Proof will consist of showing the documents to the reviewing staff member who will be looking for court docket numbers, plaintiff versus[,] requests from either the court or attorney general for specific documents, etc.

(*Id.* at 30, IV(C)).

**Applicable MDOC SOPs**

**SOP Number 31-01-01 – Offender Mail Services**

All legal or official mail from an offender will be mailed through the ILAP office. Legal or official mail will be placed in an envelope and sealed in the presence of the verifying ILAP staff member before mailing.

(Doc. 179-3 at 12).

> Legal Correspondence – Indigent offenders will have access to basic supplies necessary to send out approved legal mail on a reasonable basis as determined by the Legal Assistance Office.   The indigent offender will contact the Legal Assistance Office for help in sending any approved legal mail.   A record of such access will be kept.

(*Id.*)

## SOP Number 20-02-01 – Access to Legal Materials

> The ILAP office will be open each working day.

(Doc. 179-6 at 14.)

> Non-Scheduled Access[:]   Requests will be made on the same Request for Legal Assistance form and submitted in accordance with the sub-heading "Submission of Requests."[8]

(*Id.*)

> The ILAP Director or designee will consider each request on an individual basis.

(*Id.* at 15)

> Each request will be evaluated to ensure that no legal deadlines are missed.

(*Id.*)

> ILAP Staff will be notified of impending deadlines and will immediately contact the ILAP Director or paralegal so that timely assistance can be granted.

(*Id.*)

> The offender will be scheduled for assistance or notified that the request has been denied with applicable explanation.

(*Id.*)

---

[8] This reference back to the sub-heading "Submission of Requests" is unclear, as that section describes the method to seek legal assistance on the regular ILAP schedule for the facility (which would not work for "Non-Scheduled Access.")

Outgoing Mail[:]   ILAP staff will verify the authenticity of legal correspondence as defined herein.

(Doc. 179-6 at 18).

All legal or official mail from an offender will be mailed through the ILAP office. Legal or official mail may be placed in an envelope and sealed in the presence of the verifying ILAP staff member before mailing.

(*Id.*)

The ILAP Director will maintain a log of all legal mail that is mailed through ILAP offices for each offender including the amount of postage used, to whom mailed and the date it was mailed.

(Doc. 179-6 at 16)

**WCCF Inmate Handbook**

This facility shall permit and facilitate correspondence with attorneys, judges, public officials and governmental agencies and organizations if the correspondence does not adversely impact the order and security of the Wilkinson County Correctional Facility.

(Doc. 179-5 at 26).

Inmates are permitted to send sealed letters to a specified class of persons and organizations, including, but not limited to the following:   courts; counsel; officials of the confining authority; state and local chief executive officers; administrators or grievance systems; and members of the paroling authority.   Mail to inmates from this specified class of persons and organizations may be opened only to inspect for contraband and only in the presence of the inmate, unless waived in writing.

(*Id.* at 27).

It is the policy of this facility to ensure the right of inmates to have access to courts and provide for the right of inmates to have access to an appropriate Legal Assistance Program and to paper, and other supplies and services related to legal matters.

(*Id.*)

The Legal Assistance Program is operated out of the General Library.   The Legal Library/Library is open from 0800 – 1700 Monday through Friday.

(*Id.* at 29).

The Legal Assistance Program will be provided to an inmate when requested.

(*Id.* at 30).

> In order to receive certain services from ILAP, inmates must show an ACTIVE/OPEN CASE NUMBER on their Legal Request form.   This notice is shown on the request forms.

(*Id.*)

> If an inmate produces a court ordered deadline, copies will be made immediately.

(*Id.*)

> The library shall supply envelopes to inmates to send materials to the courts and other administrative bodies.   The inmates desiring these envelopes shall bring their completed legal material to the library.   The library clerk shall determine which type of envelope is appropriate, and shall issue these envelopes in the quantity needed to accomplish the mailing in accordance with court rules.

(*Id.* at 31).

> The Legal Assistan[ce] Program and the general library will be open approximately forty (40) hours weekly.   A schedule will be posted on applicable inmate bulletin boards.   Only those inmates approved will be allowed to visit the Library.

(*Id.*)

> **WCCF Procedure (In practice, according to WCCF Compliance Coordinator Emma Taplin)**
>
> ILAP is operated out of the General Library.   The library is open Monday through Friday, from 8:00 a.m. to 5:00 p.m.
>
> To receive assistance with legal services, inmates submit a completed Inmate Legal Assistance Program Request Form specifying the type of assistance requested, the cause number of the inmate's active case, the reason inmate requires a scheduled conference for legal services, and any applicable deadlines.   Inmates have access to ILAP request forms via the towers and the ILAP office.
>
> Upon receipt of an inmate's form requesting legal mail services, the inmate is scheduled to bring his/her legal documents to ILAP employee Rosemary Gatlin in the law library to prepare for mailing.   The legal mail is then brought to the mailroom clerk to be weighed, and the mailroom clerk delivers the mail to the post office the morning of each business day.

If an inmate has a filing deadline, he/she must notify ILAP of that deadline and request a conference to mail the legal documents in time to meet said deadline. Every effort is made to timely process the inmate's legal mail before that deadline.

The process and procedure for obtaining access to the law library and to acquire legal assistance from ILAP at WCCF, including the actions inmates must take to accomplish the timely filing of legal documents, is set forth in the Mississippi Department of Corrections ("MDOC") Inmate Handbook, the WCCF Inmate Handbook, and MDOC Standard Operating Procedure ("SOP") Nos. 20.01, 20.01.01 and 20.02, 20.02.01.

Inmates are given a copy of the WCCF Inmate Handbook upon intake to the facility. If an inmate misplaces his/her copy of the handbook, he/she may request another copy from the Classification Department, Case Manager, or the Unit Manager.

Doc. 181-4 at 1-2. (Affidavit of Emma Taplin, Compliance Coordinator of WCCF) (paragraph numbers omitted).

**ILAP Request Form**

The MDOC ILAP Request Form [Doc. 179-1] has blanks for the inmate to provide the following information:

Identification of inmate

Date of request

Type of assistance requested

Active case number

Reason for seeking a conference

Deadline

Copies of cited cases, statutes, and rules of court

Supplies needed

Mail services

Notary services

The form notes that the requesting inmate must fully complete the form (unless the inmate is illiterate) – and sign the form.

There is also a note stating, "If you are requesting immediate assistance to the legal assistance program, prior to your regularly scheduled day, you must present paperwork verifying the deadline and inform your tower officer."

Doc. 179-1.

### The Actions Huskey Was Required to Take to Timely File His Rule 59 Motion – and His Attempts to Do So

Using the sources referenced above, the court outlines below the procedure an inmate at WCCF must follow to timely file a legal motion – and the actions that Huskey took:

(1) **Request a legal assistance form from the Tower Officer (or other source).** (MDOC Inmate Handbook)

[Huskey obtained the proper form.]

(2) **Fill out the form completely and sign it.** (MDOC Inmate Handbook)

[Huskey completed and signed the form (noting his deadline in the proper space). (ILAP Request Form attached to the instant motion as Exhibit "A").[9] In a declaration included with his motion, Huskey alleges that on April 28, 2019, he placed the ILAP form in his cell door to be picked up. Doc. 141-1 at 1. His form was picked up around 7:00 p.m. that same day. *Id*. Huskey did not attach his motion to the form, as the MDOC policies and standard operating procedures, as well as WCCF policies in effect during April and May of 2019, required submission of an ILAP request form only. The legal correspondence itself is confidential information of the prisoner. *See* MDOC Handbook (Doc. 179-5 at 27) and

---

[9] The exhibits referenced in this order may be found attached to the plaintiff's Motion [179] to Deem Rule 59 Motion Timely filed.

MDOC SOP (Doc. 179-6 at 18). Accordingly, only after an ILAP form is processed and the prisoner is assigned an appointment with ILAP, does the prisoner himself present the legal correspondence to ILAP personnel for mailing.]

(3) **If the inmate needs immediate access to the Legal Assistance Program to meet his deadline, then he must present paperwork verifying the deadline and inform his Tower Officer.** (ILAP Request Form regarding "immediate access," MDOC Inmate Handbook regarding the Tower Officer procedure)

[When Huskey filled out and presented his form for delivery to ILAP by the tower officer on Sunday, April 28, 2019, he did not need "immediate access" to ILAP, as his deadline did not expire for another four days. Thus, according to the form, he was not required to present documents verifying the deadline. He nonetheless informed the Tower Officer of his deadline on multiple occasions after he presented his ILAP form and before his motion deadline of May 2, 2019, and the officer tried to relay that information to ILAP over the telephone. In particular, Huskey told a tower officer on April 30, 2019, that he needed assistance meeting a deadline, and the tower officer informed Huskey that she called ILAP to remind them of the deadline, but no one answered. Doc. 141-1. Huskey likewise told a tower officer on May 1, 2019, that he needed assistance meeting a deadline, and the tower officer again informed him that she contacted ILAP to remind them of the deadline, and no one answered. *Id*. Huskey again told a tower officer on May 2, 2019, to contact the ILAP about his deadline that day. *Id*. The officer did so, and Huskey was then informed that Rosemary Gatlin, the sole ILAP employee/Library aide, had been absent that week, but she

stated that she would try to get to Huskey that day.[10]  *Id*.  However, no one summoned Huskey to ILAP or otherwise retrieved his motion on May 2, 2019.  On May 3, 2019, one day after the filing deadline, Gatlin summoned him to the WCCF law library and assisted him with mailing his motion.  (Doc. 179-2).  In short, Huskey repeatedly followed up on his request for legal assistance.]

(4) **Send the completed ILAP Request Form to ILAP.**  (MDOC Inmate Handbook)

[Huskey sent the form via the tower officer, but as discussed above, the only person in the ILAP Office who could process it, Rosemary Gatlin, was absent until May 2, 2019 – the date of Huskey's deadline – and even then did not timely retrieve his motion.]

(5) **Take the legal documents to ILAP for mailing.**  (MDOC Inmate Handbook)

[Though she returned to work on the day of Huskey's deadline, Gatlin did not call him to ILAP and process his legal mail until May 3, 2019 – a day after the deadline expired.]

**The Prison Mailbox Rule**

Under the "prison mailbox rule" announced by the United States Supreme Court in *Houston v. Lack*, 487 U.S. 266 (1988), a *pro se* prisoner's court document is deemed to have been filed on the date that the prisoner delivers it to prison authorities for mailing to the district court, rather than the date it is received by the court clerk.  487 U.S. at 275-76.  A *pro se* prisoner is unskilled in law, unaided by counsel, and unable to leave the prison.  His control over the processing of his motion

---

[10]  The MDOC standard operating procedures in effect from April 28, 2019, through May 3, 2019, provided that "[t]he ILAP office will be open each working day."  (Doc. 179-6 at 14.)  However, no ILAP employee was working at WCCF from Monday, April 29, 2019, through Wednesday, May 1, 2019.  (Doc. 141-1).  Gatlin returned to work on Thursday, May 2, 2019.  *Id.*  April 29, 2019, through May 2, 2019, were all "working days" under MDOC policy, but there was no MDOC or WCCF policy addressing how legal mail would be handled if ILAP was not staffed on working days. (Doc. 181-4.)

- 13 -

ends as soon as he hands it over to the prison authorities, and the only information he will likely have is the date he delivered the motion to those authorities and the date ultimately stamped upon it. *Id.* at 270-71. Thus, the moment a *pro se* prisoner loses control over – and contact with – his notice of appeal is when he delivers it to prison authorities, not when the Clerk of the Court receives it. *Id.* at 275-76.

A prisoner files a timely Rule 59(e) motion by depositing it in the prison mail system "on or before the last day for filing." Fed. R. App. P. 4(c)(1); *see Uranga v. Davis*, 893 F.3d 282, 285 (5th Cir. 2018) (prison mailbox rule extended to include Rule 59(e) motions).[11] He can establish the date on which he gave the papers to be filed with the court to a prison official in one of two ways. Fed. R. App. P. 4(c)(1). First, if the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule. *Id.* The second mechanism for establishing a filing date for purposes of the mailbox rule is placement in the prison's internal mail system (if the inmate does not have access to a legal mail system). Fed. R. App. P. (c)(1) – (c)(1)(A). In either case, the prisoner must prove compliance with the mailbox rule by submitting a declaration under 28 U.S.C. § 1746, a notarized statement (or other evidence) showing the filing's date of deposit with prison officials, and attesting that first-class postage was prepaid. Fed. R. App. P. 4(c)(1)(A)(i)–(ii).

---

[11] The Mississippi prison mailbox rule is substantially the same as the federal one. A document filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. *Cunningham v. Bradley*, No. 1:17CV169-SA-RP, 2019 WL 208880, at *3 (N.D. Miss. Jan. 15, 2019), *citing Sykes v. State*, 757 So. 2d 997, 1000-01 (Miss. 2000). If a prison has a system designed for tracking legal mail, the inmate *must use that system* to receive the benefit of the prison mailbox rule. *Id*.

- 14 -

The prison mailbox rule contemplates that an inmate will present the pleading or motion, itself (rather than merely the form requesting legal assistance), to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385, 101 L. Ed. 2d 245 (1988). Thus, the Fifth Circuit inquired of this court whether Huskey presented prison officials with his actual Rule 59 motion. Doc. 155 at 6. As discussed, prison legal mail procedures at WCCF required Huskey to submit his legal correspondence only *after* ILAP had responded to his request for legal assistance (which occurred only after his filing deadline had expired). If an institution has a system designed for legal mail, the inmate *must use that system* to receive the benefit of the prison mailbox rule. Fed. R. App. P. 4(c)(1); *United States v. Reynolds*, 2007 WL 1962949, at *1 (W.D. La. June 28, 2007); *Cunningham*, 2019 WL 208880, at *3 (requiring MDOC inmate housed at WCCF to use the ILAP legal mail system to invoke the prison mailbox rule). Such a legal mail system was in place in the present case. (Exhibit "B," at ¶ 3; *see also* Exhibit "C," Exhibit "D," Exhibit "E," and Exhibit "F"). The MDOC policies, MDOC standard operating procedures, and WCCF policies in effect at the time required submission of an ILAP request form only. An inmate seeking to mail legal correspondence must do so in person, by appointment, once the ILAP form has been processed. (Exhibit "B," at ¶ 11).

In keeping with the policy, Huskey had been expressly instructed to submit *only* the ILAP request form *and not to attach the pleading* with which he needed assistance. (Exhibit "B," at ¶ 11) In accordance with these instructions, Huskey did not attach his Motion to his ILAP Request Form and did not present it to prison officials until his ILAP meeting on May 3, 2019. Thus, Huskey followed the applicable procedures governing submission of his legal mail – and initiated the legal mail process well in advance of the filing deadline.

**Reasons to Extend the Rule 59 Filing Deadline**

- 15 -

There are several reasons a court may extend the Rule 59 filing deadline. In appropriate circumstances, courts have found rejection of mail on an unreasonable ground, excusable neglect, extenuating circumstances, and equitable tolling sufficient to do so. Though these reasons arise from different sources, in this case they are based on the fact that circumstances beyond Huskey's control foiled his repeated attempts to file his motion in a timely fashion.

**Mail Rejected on an Unreasonable Ground**

The logical implication of the requirement that prisoners "follow *reasonable* prison regulations governing prisoner mail" to enjoy the benefit of the mailbox rule is that the rule still applies when mail is rejected on an *unreasonable* ground. *Medley v. Thaler*, 660 F.3d 833, 840 (5th Cir. 2011) (internal citation omitted). The mailbox rule does not require *pro se* prisoners to compensate for the prison's errors, especially where it may be impossible for them even to discern such an error. *Id.* In this case, the delay in providing Huskey with mail service for his Rule 59 motion arose because no ILAP personnel were available to help him in the days prior to his deadline – and, though ILAP staff were available on the deadline day, they did not process his legal mail until the day after the deadline expired. Huskey need not compensate for the prison's error in failing to provide assistance; as such, he benefits from the prison mailbox rule.

**Excusable Neglect**

The Fifth Circuit has found the concept of excusable neglect to be "somewhat elastic," which can include "inadvertent delays," and the inquiry should be equitable in nature. *United States v. Clark*, 51 F.3d 42, 43-4 (5th Cir. 1995), *quoting Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 391, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). Where a petitioner presented evidence that his prison was in lockdown status from two days after the date that the order was entered until the day that he signed his notice of appeal, the district court determined that the

- 16 -

petitioner presented sufficient evidence to support a finding of excusable neglect and was entitled to an extension of time to appeal. *United States v. Mendoza-Cano*, No. 3:10-CR-0004-P (02), 2014 U.S. Dist. LEXIS 35914, at *3-4 (N.D. Tex. Feb. 7, 2014). The unavailability of ILAP personnel to assist Huskey in a timely fashion (and their failure to do so when present on the deadline date) also constitutes excusable neglect or good cause, and for this reason the prison mailbox rule applies to his Rule 59 motion.

### Extenuating Circumstances

Courts have also found late filings by *pro se* prisoners to be timely under the prison mailbox rule in light of extenuating circumstances. In *Brown v. Taylor,* 829 F.3d 365 (5th Cir. 2016), the petitioner, a *pro se* civil detainee, was prohibited from using the mailboxes at the hospital where he was admitted as well as at the library. *Id.* at 369. The petitioner could not "personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice." *Id.* at 369-370. Rather, the petitioner, as a *pro se* civil detainee, had "no choice but to entrust the forwarding of his [Rule 59(e) motion] to authorities whom he cannot control or supervise and who may have every incentive to delay." *Id.* Given the petitioner's confinement and his inability to file his Rule 59(e) motion himself, the prison mailbox rule applied, and the court found his motion to be timely. *Id.; see also Parker v. Bowersox*, 975 F. Supp. 1251, 1253 (W.D. Mo. 1997).

On facts quite similar to those in the present case, the United States District Court for the Western District of Kentucky found a notice of appeal filed one day after the deadline to be timely where the prison mailroom had been closed during the relevant time due to the COVID-19 pandemic. *Davis v. United States*, No. 3:14-CR-31-RGJ-1, 2021 WL 2383723, at *1 (W.D. Ky. June 10, 2021). The district court found that penalizing the petitioner for a one-day delay under those circumstances would not achieve substantial justice. *Id.* As in *Brown* and *Davis* Huskey was confined, and he

- 17 -

could not file the Rule 59 motion himself.   Hence, in light of these extenuating circumstances, Huskey may use the prison mailbox rule.

**Equitable Tolling**

Finally, courts have found *pro se* filings to be timely under the prison mailbox rule through the doctrine of equitable tolling, which applies if the relevant facts present sufficiently "rare and exceptional circumstances" to warrant application of the doctrine.   *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).   To invoke equitable tolling, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida,* 549 U.S. 327, 336 (2007).   The diligence required to support equitable tolling is not "maximum feasible diligence," but "reasonable diligence."   *Holland v. Fla.*, 560 U.S. 631, 635, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (citations omitted).   By any rational measure, Huskey was diligent in pursuing relief through his Rule 59 motion.   Beginning four days prior to his deadline, he tried multiple times to contact ILAP to timely file his motion, to no avail.   No one was even present in the ILAP office until the motion deadline, and no one actually assisted him in filing his motion until the day after the deadline expired.   This extraordinary circumstance prevented Huskey from timely filing his motion, and he diligently pursued the motion before the deadline expired. Thus, under the doctrine of equitable tolling, the prison mailbox rule applies in this case.

**Huskey Followed the Rules Applicable at the Time**

Huskey complied with MDOC and WCCF legal mail procedures.   The issue in this case arose solely from an unusual and extenuating circumstance:   No one was present at the Inmate Legal Assistance Program ("ILAP") office during the days leading up to Huskey's Rule 59(e) deadline, and no one processed his request on the deadline (though the ILAP office was staffed that day).   As such, the ILAP procedure was simply unavailable to him during that time.   As discussed above, based on

- 18 -

these unique facts, Husky benefits from the prison mailbox rule because: (1) ILAP staff delayed processing his Rule 59(e) motion based on an unreasonable ground; (2) Excusable neglect rendered his motion timely; (3) Extenuating circumstances excused the late filing; and (4) Equitable tolling applied to render his motion timely. *See Houston v. Lack*[12], *Medley v. Thaler*[13], *United States v. Mendoza-Cano*[14]*, Brown v. Taylor*[15], and *Lawrence v. Florida*[16]. The prison mailbox rule applies, and the court thus deems Huskey's Rule 59(e) motion timely filed.

       **SO ORDERED**, this, the 29th day of April, 2022.

                                      /s/   Jane M. Virden
                                      UNITED STATES MAGISTRATE JUDGE

---

[12] The seminal case regarding the prison mailbox rule.

[13] Applying the prison mailbox rule when a prison rejected inmate's mail on an unreasonable ground.

[14] Finding that excusable neglect rendered a filing timely in the context of the prison mailbox rule.

[15] Holding extenuating circumstances can excuse late filing in the context of the prison mailbox rule.

[16] Applying equitable tolling to find a filing timely under the prison mailbox rule.